UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON NATURAL DESERT ASS'N, CENTER FOR BIOLOGICAL DIVERSITY, and WESTERN WATERSHEDS PROJECT, | Civil No. 07-1871-HA [Related Case No. 08-151-HA] [Related Case No. 03-381-HA] |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| TOM TIDWELL, *et al.*, | |
| Defendants, | |
| v. | |
| OREGON CATTLEMEN'S ASS'N, *et al.*, | |
| Defendant-Intervenors. | |

HAGGERTY, District Judge:

The parties to this action include: (1) plaintiffs Oregon Natural Desert Association, Center for Biological Diversity, and Western Watersheds Projects (collectively referred to as "ONDA"); (2) defendants Tom Tidwell, Doug Gochnour, Barry Thom, the United States Forest

1 -- ORDER

Service (Forest Service), and the National Marine Fisheries Service (NMFS) (collectively referred to as "federal defendants"); and (3) intervenor-defendants, including a group of ranchers permitted to graze cattle on allotments contained within the Malheur National Forest (collectively referred to as "permittees"). The parties are familiar with the factual and procedural background of this case, and specific facts will only be discussed as necessary for the analysis of the legal issues presented.

Federal defendants, ONDA, and permittees each moved for summary judgment on their respective claims under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–43, and the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600–1614. This court partially granted each motion on June 4, 2010.

This court determined that the NMFS's actions were not arbitrary and capricious when it issued the "no jeopardy" and "no adverse modification" conclusions in the 2007-2011 Biological Opinion (BiOp) based on representations by the Forest Service. Opinion and Order, Doc. No. 497, at 30-32. The NMFS also did not violate the ESA when it issued the 2007-2011 BiOp without evaluating whether the proposed grazing would comply with the Forest Service's Interim Strategies for Managing Anadromous Fish Producing Watersheds, commonly known as "PACFISH." *Id.* at 34.

This court concluded that the Forest Service violated the ESA and the NFMA. The Forest Service issued grazing authorizations in violation of § 7(a)(2) of the ESA for 2007 and 2008, violated the Incidental Take Statements (ITS) in 2007 and 2008, and failed to reinitiate consultation following the ITS violations. *Id.* at 32-38. This court also found that the Forest Service violated the NFMA by authorizing grazing without evaluating all the proper standards. *Id.* at 40.

2 -- ORDER

Following the ruling, this court ordered the parties to confer regarding the appropriate remedies for the stated violations. After failed attempts to resolve the remedial issues informally, the parties submitted briefing to assist the court in fashioning the appropriate remedy. Oral argument was deemed unnecessary for resolving the issues presented.

## DISCUSSION

ONDA asks this court to impose a permanent injunction, order federal defendants to complete formal consultation before livestock turnout in 2011, order the Forest Service to demonstrate that the proposed grazing will comply with the land resource management plan (LMRP) and the NFMA, and request "a continuation during the life of the new consultation of the transparency and accountability mechanism that have reduced damage to steelhead critical habitat during the past two grazing seasons." Pls.' Mem. on Remedy at 3-4.

ONDA also seeks reasonable fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. A decision concerning attorney fees and costs will issue at a later date, following a proper motion. *See* 28 U.S.C. § 2412(d)(1)(B).

Federal defendants and intervenors filed responsive briefing, but failed to propose alternative remedies. Instead, they contend that ONDA mischaracterized the ESA and the NFMA violations cited by this court, contend that ONDA applied the wrong standard for obtaining injunctive relief, and assert that this court is without jurisdiction to enjoin future actions. Permittees reference alternative fencing, herding, or riding techniques, but provide no recommendations. Resp. to Mem. on Remedy at 15.

The parties have therefore presented the court with a choice between the full injunctive relief proposed by ONDA and no alternative remedy. Accordingly, the court must exercise its discretion to formulate the proper relief to remedy the environmental violations at issue. *See Pit*

3 -- ORDER

*River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1081 (9th Cir. 2010) (discussing the variety of appropriate remedies for environmental statute violations).

    1.    **Permanent Injunction**

Pursuant to this court's Order on June 4, 2010, ONDA has succeeded on the merits of several of its claims. In conjunction with that ruling, this court has broad discretion to craft an equitable remedy. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009).

To obtain the permanent injunctive relief sought, ONDA must meet a four-factor test. As plaintiff, ONDA must demonstrate that: (1) it has suffered, or will suffer, an irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships between the parties warrants a remedy in equity; and (4) the public interest would not be dis-served by a permanent injunction. *California v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019 (9th Cir. 2009). The injunctive relief must also be narrowly tailored to the specific injury. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009).

This remains the proper test for evaluating permanent injunctions after *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008), and *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743 (2010).

It is unclear after *Monsanto* whether the irreparable harm requirement must be established by the plaintiff or the agency in an ESA case. *Compare Monsanto Co.*, 130 S. Ct. at 2756 (holding that the plaintiff must satisfy the four-factor test), *with Wash. Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1035 (9th Cir. 2005) (holding that the agency who violated the ESA bears the burden to show that the action to be enjoined is non-jeopardizing, and that the plaintiff is not required to establish irreparable harm). However, because this court finds that ONDA can demonstrate irreparable harm in this case, the court need not decide whether

4 -- ORDER

*Monsanto* overruled the standard applied in *Washington Toxics*.[1]

### A.     Irreparable Harm

ONDA contends that an injunction is necessary to protect threatened steelhead and steelhead critical habitat, and to ensure that the Forest Service complies with its responsibilities. Defendants respond that ONDA cannot demonstrate any irreparable harm to justify a permanent injunction. In particular, federal defendants assert that ONDA must "show that even a single cow-calf pair grazing for one day on a single pasture is likely to cause it irreparable injury." Fed. Defs.' Mem. on Remedy at 10. This, however, is not the test.

An environmental injury is often permanent and irreparable. *California*, 575 F.3d at 1020. Courts have repeatedly observed that livestock grazing can cause irreparable harm to threatened steelhead and steelhead habitat. *See, e.g.*, *Or. Natural Desert Ass'n v. Lohn*, 485 F. Supp. 2d 1190, 1192 (D. Or. 2007) (listing how grazing can destroy or adversely modify steelhead habitat) (vacated as moot, 2009 WL 123525 (9th Cir. Jan. 12, 2009)); *W. Watersheds Project v. U.S. Forest Serv.*, No. CV-05-189-E-BLW, 2006 WL 1697181, at *1 (D. Idaho June 12, 2006). This is primarily because habitat modification that is reasonably certain to injure an endangered species establishes irreparable injury. *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 925 (9th Cir. 2000).

The record amply supports a finding of irreparable harm. In 2008, this court held that "irreparable injury would occur due to grazing on the Murderers Creek Allotment and the Lower Middle Fork Allotment during the 2008 grazing season." Opinion and Order, Doc. No. 129, at

---

[1] If the Forest Service bears the burden of proof pursuant to *Washington Toxics*, this court finds that it has failed to meet its burden. The data provided by federal defendants for the 2010 grazing season shows that the standards in the 2007-2011 BiOp were exceeded on each of the allotments where grazing is enjoined. *See* Fed. Defs.' Mem. on Remedy at Ex. A.

5 -- ORDER

15. In 2010, this court held that based on the bank alteration standards set out in the ITS, an unlawful take had occurred in 2007 and 2008 on at least three of the thirteen allotments. Opinion and Order, Doc. No. 497, at 36-37. This court found that the bank exceedances in these areas were "particularly deplorable" considering that the Forest Service observed a high spawning potential in these allotments. *Id.*

Moreover, if a § 9 take has occurred—as I found in this case—an injunction is the proper remedy. *Defenders of Wildlife*, 204 F.3d at 925 (holding that a reasonably certain threat of imminent harm to a protected species is sufficient for issuance of an injunction under § 9 of the ESA). This court recognized that it was "likely take occurred in 2007 on the Murderer's Creek and Hamilton/King Allotments, and on the Fox Creek Allotment in 2008, due to significant habitat degradation." Opinion and Order, Doc. No. 497, at 36-37. Therefore, ONDA had proven its § 9 claim by a preponderance of the evidence. *Id.* at 35; *Bernal*, 204 F.3d at 925.

The record confirms that harm to steelhead habitat occurred under the 2007-2011 BiOp because the Forest Service authorized grazing on the allotments despite its failure to conduct the mitigation measures delineated in the BiOp and ITS. The Forest Service complied with its monitoring and enforcement standards only after this court issued preliminary injunctive relief. The court reasonably assumes that absent further injunctive relief, important mitigation measures intended to protect steelhead will not be performed, and irreparable harm will result.

Additionally, the ESA has been described as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *W. Watersheds Project v. Kraayenbrink*, 620 F.3d 1187, 1208 (9th Cir. 2010) (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978)). To uphold Congress's broad goals under the ESA, a district court may, and often must, enjoin an agency pending its compliance with § 7(a)(2). *Id.* at 1213; *see also Wild*

6 -- ORDER

*Fish Conservancy v. Salazar*, No. 09-35531, 2010 WL 4948477, at *17 (9th Cir. Dec. 7, 2010) (directing the district court to grant injunctive relief until the agency complies with its obligations under the ESA); *Wash. Toxics Coal.*, 413 F.3d at 1034-35 (noting that the appropriate remedy for violations of the consultation requirements is an injunction until the agency complies with the ESA).

This court found that the Forest Service violated its duties under § 7(a)(2) by issuing grazing authorizations based on inaccurate information. Opinion and Order, Doc. No. 497, at 33. Injunctive relief is therefore appropriate in this case until the Forest Service complies with its ESA consultation requirements as directed in my previous Order.

The traditional balance of harms analysis is applied before issuing injunctive relief under the NFMA as well. *Or. Natural Res. Council v. Goodman*, 505 F.3d 884, 897-98 (9th Cir. 2007). This court finds that irreparable harm will result absent injunctive relief. Accordingly, the Forest Service's actions can be enjoined until the NFMA violations are also corrected. *See id.* at 898.

### B. Adequacy of Other Remedies

As the Ninth Circuit explained, an "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages . . . ." *California*, 575 F.3d at 1020. In such a case, the balance of harms will usually favor injunctive relief to protect the environment. *Id.*

The harm to the environment in this case cannot be compensated by monetary damages. Middle Columbia River steelhead were listed as threatened in 1999, and despite recent increases in their returns, this steelhead species remains likely to become endangered. *See* Revised Administrative Record Index for Malheur National Forest at 29376-77. The loss of a species is a harm to the public that cannot be remedied with money. This factor weighs in favor of issuing the injunctive relief requested.

7 -- ORDER

        **C.**        **Balance of Hardships**

After weighing the harms present in the case, the balance tilts in ONDA's favor. "Congress has decided that under the ESA, the balance of hardships always tips sharply in favor of the endangered or threatened species." *Wash. Toxics Coal.*, 413 F.3d at 1035; *see also Nat'l Wildlife Fed'n*, 422 F.3d at 796 ("In ESA cases such as the one at bar, 'the balance has been struck in favor of affording endangered species the highest of priorities.'").

Federal defendants do not cite any competing harm, and concede that in balancing the harms in an ESA case, "in the ordinary course the balance should be found to weigh in favor of the listed species at issue." Fed. Defs.' Mem. on Remedy at 8.

Permittees contend that irreparable economic harm will befall them and the greater public of Grant County if the injunction is issued. The court has properly weighed the economic interests of the permittees and the local communities who depend upon grazing on the public land. *See Earth Island Inst. v. Carlton*, 2010 WL 4399138, at *9 (9th Cir. Nov. 8, 2010) (noting that economic harm may be considered when balancing the equitable interests). However, the proposed injunction will not totally deprive permittees of their grazing rights. The economic harms suffered by permittees fall short of providing "a significant counterweight" to the harm caused to the public and the environment. *See Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1055 (9th Cir. 2010).

Moreover, the injunction proposed by ONDA would remain in effect only until the Forest Service completes its required consultation process, and the NMFS issues the new 2011-2015 BiOp. If federal defendants uphold their representations to the court about completing consultation as planned, then the new BiOp should be issued before livestock turnout in 2011.

8 -- ORDER

### D.     Public Interest

The court must recognize "the well-established 'public interest in preserving nature and avoiding irreparable environmental injury.'" *Alliance*, 622 F.3d at 1056 (citation omitted). Accordingly, this court finds that the public interest is furthered by suspending grazing in some areas until the Forest Service completes its consultation requirements and the NMFS issues a new BiOp. *See id.* (noting that suspending projects until the agency considers the environmental impacts of its actions comports with the public interest). Although the economic concerns raised by permittees are valid and reasonable, they fall short of outweighing the public interest in protecting a threatened species, especially when compliance with federal law and regulations by federal defendants will ameliorate or extinguish the possible impacts on the permittees.

### E.     Scope

The court must craft a remedy that is narrowly tailored to the harm suffered in this case. If a continuation of the status quo would result in irreparable harm to a threatened species, an injunction is proper. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 796 (9th Cir. 2005).

In 2009, this court noted that even when the Forest Service proposed proper grazing restrictions, the Forest Service repeatedly failed "to carry out planned mitigation and monitoring measures on the [Malheur National Forest]," requiring this court "to enter an order ensuring the implementation of the Forest Service's proposals." Order, Doc. No. 301, at 2. This court also recognized that damage from grazing impacts future seasons and must be remedied. Opinion and Order, Doc. No. 497, at 14. The record indicates that without injunctive relief, the status quo will continue, past damage will not be remedied, and irreparable harm will result.

This court rejects the argument by federal defendants and permittees that past violations of the ESA and the NFMA cannot be remedied by prospective equitable relief. *See Feldman v. Bomar*, 518 F.3d 637, 642-43 (9th Cir. 2008) (listing equitable remedies crafted by the court to remedy past harm by enjoining or limiting future conduct). Depriving the court of authority to remedy past injuries to threatened species by preventing future violations makes irreparable harm not just likely, but certain. This argument is without merit.

Defendants rely on *Monsanto* in contending that future injunctive relief is unavailable. In *Monsanto*, the Court reversed the district court's injunctive relief under the National Environmental Policy Act (NEPA) as premature and not narrowly tailored because the agency had not been given an opportunity to exercise its authority to issue a partial de-regulation remedy. *Monsanto Co.*, 130 S. Ct. at 2758-59. Therefore, the Court held that an injunction was unwarranted when a less drastic remedy is available that would sufficiently redress the plaintiff's injury. *Id.* at 2761.

The NEPA regulations at issue in *Monsanto* allowed the agency to act on its proposal that required an environmental impact statement (EIS) before the issuance of a final EIS. *Id.* at 2758 n.5. In contrast, the ESA prohibits an agency from making "any irreversible or irretrievable commitment of resources" during the consultation process, and an agency can be enjoined pending its completion of the ESA's consultation requirements. 16 U.S.C. § 1536(d); *Kraayenbrink*, 620 F.3d at 1213 (affirming district court's decision to enjoin agency until § 7(a)(2) requirements were met). Moreover, the Court in *Monsanto* left open a possibility that preventive measures "to guard against" future agency action could justify injunctive relief. *Monsanto Co.*, 130 S. Ct. at 2759.

10 -- ORDER

After reviewing the record, including the most recent monitoring results offered by federal defendants, this court concludes that a permanent injunction must issue against any grazing in the areas where past takes have occurred, and where the 2010 data establishes the existence of bank alteration violations, until the NMFS issues a legally adequate 2011-2015 BiOp.  The enjoined allotments include: Lower Middle Fork Allotment, Murderer's Creek Allotment, Hamilton/King Allotments, Fox Creek Allotment, Mt. Vernon/John Day/Beech Allotments, Slide Creek Allotment, and Upper Middle Fork Allotment.  *See* Fed. Defs.' Mem. on Remedy, Ex. A at 4, 8, 9, 11, 14, 16.

For the remaining allotments where grazing is permitted, the Forest Service and permittees are required to maintain all the mitigation measures contemplated in the 2007-2011 BiOp, as well as the additional monitoring, fencing, and active herd management required by this court for the 2009 and 2010 grazing seasons.  *See* Order, Doc. No. 301; Order, Doc. No. 485.

**2.    Public notice**

ONDA requests disclosure by the federal defendants of the proposed action, biological assessment, and biological opinion for the 2011-2015 grazing plan once they are completed.  Federal defendants have agreed to make their current and finalized biological assessments and biological opinions available to "ONDA and any member of the public who so requests."  Fed. Defs.' Mem. on Remedy at 12-13.  The court finds this agreement to be reasonable and adequate to satisfy the transparency and public accountability goals that ONDA seeks.

Federal defendants must also provide permittees with "the opportunity to submit information for consideration during the consultation" as required by 50 C.F.R. § 402.14(d).  This court will retain jurisdiction over this case until the Forest Service completes consultation and the NMFS issues the 2011-2015 BiOp to ensure that this process is completed.  *See Res.*

11 -- ORDER

*Ltd., Inc. v. Robertson*, 35 F.3d 1300, 1308 (9th Cir. 1993) (providing the district court with continued jurisdiction to ensure that the agency completes its duties within the time allowed).

**CONCLUSION**

Pursuant to my Opinion and Order dated June 4, 2010, each of the parties' Motions for Summary Judgment [379, 401, and 429] was granted in part.

In civil case 07-1871-HA, judgment is for the federal defendants on Claims 1, 2, 3, and 5 in the Third Amended Complaint. Judgment is for ONDA on Claims 6, 7, 8, and 9. For Claims 4 and 10, judgment is for ONDA regarding the annual authorizations and permit modifications for years 2007 and 2008.

In civil case 03-381-HA, judgment is for ONDA on Claims 1 and 2 of the Fifth Amended Complaint.

In civil case 08-151-HA, judgment is for federal defendants on Claims 1, 2, 3, 4, and 5 of the Second Amended Complaint. Judgment is for permittees on Claim 6.

IT IS ORDERED that the Forest Service is enjoined from authorizing livestock grazing on Lower Middle Fork Allotment, Murderer's Creek Allotment, Hamilton/King Allotments, Fox Creek Allotment, Mt. Vernon/John Day/Beech Allotments, Slide Creek Allotment, and Upper Middle Fork Allotment, until the Forest Service has submitted Biological Assessments for the 2011–2015 grazing plan to the National Marine Fisheries Service, and the National Marine Fisheries Service has issued a legally adequate Biological Opinion for the 2011–2015 grazing plan. The Forest Service is ordered to comply with its obligations under the National Forest Management Act, the Malheur National Forest Land and Resource Management Plan, and the Endangered Species Act.

Federal defendants shall make their biological assessments and biological opinions available to "ONDA and any member of the public who so requests," as they have agreed to do in their briefing.

Until the 2011-2015 Biological Opinion is issued, the Forest Service and permittees are required to maintain all the mitigation measures contemplated in the 2007-2011 Biological Opinion. Additionally, the Forest Service is ordered to maintain the mitigation measures it proposed for the 2010 grazing season (Doc. No. 471), including:

- weekly monitoring of all critical habitat pastures when livestock are present;
- mid-rotation Multiple Indicator Monitoring on each pasture;
- delivering field monitoring status reports to the parties every three weeks during grazing season; and
- filing a comprehensive mid-season status report with the court.

This court will retain jurisdiction over this case until the 2011-2015 Biological Opinion is issued, or as otherwise agreed to by the parties.

IT IS SO ORDERED.

DATED this __29__ day of December, 2010.

    /s/ Ancer L. Haggerty
    Ancer L. Haggerty
    United States District Judge

13 -- ORDER