UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON NATURAL DESERT ASS'N, CENTER FOR BIOLOGICAL DIVERSITY, and WESTERN WATERSHEDS PROJECT,<br><br>    Plaintiffs,<br><br>    v.<br><br>TOM VILSACK, *et al.*,<br><br>    Defendants,<br><br>    v.<br><br>OREGON CATTLEMEN'S ASS'N, *et al.*,<br><br>    Defendant-Intervenors. | Case No. 2:07-cv-01871-HA<br>[Related Case No. 2:08-cv-00151-HA]<br>[Related Case No. 3:03-cv-00381-HA]<br><br>ORDER |

HAGGERTY, District Judge:

    Plaintiffs in case numbers 2:07-01871-HA and 3:03-00381-HA (intervenor defendants in 2:08-00151-HA) Oregon Natural Desert Association, Western Watersheds Project, and Center for Biological Diversity (collectively referred to as "plaintiffs" or "ONDA") sought declaratory

1 -- ORDER

and injunctive relief against the United States Forest Service (Forest Service), the National Marine Fisheries Service (NMFS) and various federal officials acting in their official capacities (collectively referred to as "federal defendants"). Plaintiffs alleged federal defendants had violated the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–43, and the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600–1614, in managing grazing on public lands supporting threatened steelhead trout in Oregon's Malheur National Forest (MNF). Intervenor defendants in case numbers 2:07-01871-HA and 3:03-00381-HA (plaintiffs in case number 2:08-00151-HA) a group of ranchers permitted to graze cattle on allotments contained within the MNF and cattle industry interest groups (collectively referred to as "permittees" or "intervenors"), also sought declaratory and injunctive relief against federal defendants for violations of the ESA.

On July 30, 2012, this court entered judgment in 2:08-00151-HA, and on November 26, 2012, this court entered a stipulated judgment in 2:07-01871-HA and 3:03-00381-HA. In the final judgment, the court entered judgment in favor of plaintiffs on the Sixth, Seventh, Eighth, and Ninth Claims of their Third Amended Complaint in 2:07-cv-1871-HA, and on the First and Second Claims of their Fifth Amended Complaint in 3:03-cv-381-HA; in favor of federal defendants on the First, Second, Third, and Fifth Claims of the Third Amended Complaint in 2:07-cv-1871-HA, and partially in favor of plaintiffs and partially in favor of federal defendants on the Fourth and Tenth Claims of the Third Amended Complaint in Case No. 2:07-cv-1871-HA.

Plaintiffs now move for an award of attorney fees and costs.[1] For the following reasons,

---

[1] Intervenors have already been awarded attorney fees pursuant to a settlement agreement with federal defendants and have taken no position in the instant motion. Additionally, plaintiffs previously sought an interim award of attorney fees, however, given that final judgment appeared to be imminent (and was eventually entered) the court required the parties to resolve any attorney

2 -- ORDER

plaintiffs' Motion for Attorney Fees [664] is granted in part.

**STANDARDS**

In this matter, plaintiffs request a fee award pursuant to both the ESA's citizen suit provision, 16 U.S.C. § 1540(g), and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). Pursuant to the ESA, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such an award is appropriate." 16 U.S.C. § 1540(g)(4). Pursuant to EAJA:

> Unless expressly prohibited by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any [costs], incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Because the ESA's citizen suit provision provides an express authorization for attorney fees in ESA cases, the court looks first to the ESA and then to EAJA in evaluating plaintiffs' fee request. *See*, Payment of Attny's Fees in Litigation Involving Successful Challenges to Fed. Agency Action Arising Under the Admin. Procedure Act and the Citizen-Suit Provisions of the [ESA], 2000 WL 34474453 (2000). As such, EAJA's fee provisions are subordinated to those of the ESA and only if a fee is not authorized under the ESA does the court determine whether the fee would be authorized pursuant to EAJA. Because the fee shifting provisions of the ESA and EAJA constitute partial waivers of sovereign immunity, the waivers must be construed in favor

---

fee disputes through a global motion for fees. The court has considered the briefing submitted by the parties in relation to the unresolved Interim Motion for Attorney Fees [610] in resolving the current motion.

3 -- ORDER

of federal defendants and against an award of fees when such an award is not clearly authorized by the statutes. *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).

A district court should calculate awards of attorney fees using the "lodestar" method. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The "lodestar" is calculated by multiplying the number of hours an attorney reasonably expended by a reasonable hourly rate. *Id.* The party requesting fees has the "burden to submit detailed records justifying the hours expended. *Winniger v. SI Mgmt. LP*, 301 F.3d 1115, 1126 (9th Cir. 2002). However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry" and "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The "results obtained" factor is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* Where a plaintiff succeeds on only some of his claims, the Supreme Court has adopted a two-part test to determine whether a requested fee should be reduced. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

Under *Hensley*'s two-part test, if the unsuccessful and successful claims are unrelated, the fee award may not include fees for time spent litigating the unsuccessful claims. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). Related claims "involve a common core of facts or [are] based on related legal theories." *Id.* (quotation and citations omitted). Unrelated claims are "distinctly different" and are based on disparate facts and legal theories. *Id.* Factors that may be relevant in determining relatedness include whether the different claims were

4 -- ORDER

designed to seek relief for the same course of conduct, whether the claims were presented separately, whether testimony on claims overlapped, and whether evidence concerning one claim was material and relevant to another. *Id.*

If the unsuccessful and successful claims are found to be related, the court must apply the second part of the *Hensley* test and gauge the overall success of the plaintiff in relation to the hours expended. *Id.* "If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive." *Id.* (quoting *Hensley*, 461 U.S. at 435-37).

## DISCUSSION

The parties and the court are familiar with the lengthy background of these consolidated cases and that background will only be discussed as necessitated by this court's analysis of the parties' arguments and plaintiffs' request for fees. Before reaching plaintiffs' fee request, and federal defendants' arguments in opposition, the court notes that its analysis of the present motion has been made more difficult than it ought to have been. The fees requested are great, in large part because this case involved a large administrative record, complex scientific materials, and a lengthy duration of time. However, there is no doubt that the hours expended were increased dramatically by repeated delays caused by federal defendants and government counsel. It was readily apparent at a relatively early stage in this litigation that the Forest Service would need to reinitiate formal consultation because the Incidental Take Statement had been abrogated numerous times. Nonetheless, plaintiffs were required to litigate multiple temporary restraining order / preliminary injunction motions as well as complex summary judgment and remedies motions in order to vindicate their position. That alone increased the time (and fees) necessary to litigate these cases. However, government counsel's repeated requests for extensions of time and

5 -- ORDER

dilatory conduct have undoubtedly increased the number of hours reasonably expended and requested. Lastly, the government's briefing on the instant motion was inadequate.[2] Were counsel's client a private party, the court would have granted the fee request in its entirety as unopposed. However, because the fee award will be paid out of taxpayer dollars, the court felt compelled to fully evaluate plaintiffs' fee request for reasonableness.

Plaintiffs' request an award of $1,371,893.96 for fees, costs, and other expenses. Federal defendants contend that the fees requested are excessive for a number of reasons including the difference between the relief sought and that ultimately achieved, the fact that plaintiffs did not prevail on their claims against the National Marine Fisheries Service (NFMS), the hourly rates sought, deficient billing documentation, and excessive hourly rates for both attorneys and witnesses.

### 1. Plaintiffs' Success

Federal defendants contend that this court should make an across the board reduction in plaintiffs' fee request of twenty-five to fifty percent in light of the fact that plaintiffs did not prevail on all their claims, did not prevail on any of their claims against NMFS, and did not win all relief sought in the preliminary injunctions. As a primary matter, federal defendants underrepresent the success plaintiffs achieved. As is clear from the declarations submitted by counsel, the motions for preliminary injunctions, and this court's rulings, plaintiffs achieved

---

[2] Federal defendants missed the deadline for filing their Response in opposition to plaintiffs' fee motion without requesting or receiving the court's permission. It was only after *plaintiffs* contacted this court that this court extended the time in which federal defendants could respond. This court finds that Response lacking. It is due to only plaintiffs' reasonableness and this court's discretion that the court is now reviewing this matter. Federal defendants then requested leave to file a surreply to cure some of the Response's many deficiencies. However, that request was denied as it was untimely and unwarranted.

6 -- ORDER

considerable success both in court and on the MNF. More importantly, the use of across-the-board reductions on a percentage basis is generally frowned upon. *Crawford v. Astrue*, 586 F.3d 1142, 1152 (9th Cir. 2009) ("the use of percentages does not discharge the district court from its responsibility to set forth a concise but clear explanation of its reasons for choosing a given percentage reduction") (citation and quotations omitted). In light of the fact that federal defendants fail to present anything resembling a compelling and clear rationale for across the board percentage reductions, the court will refrain from adopting such an approach. Rather, the court will utilize the approach set forth in *Hensley*.

The first question presented by *Hensley*'s two-part test is whether the successful and unsuccessful claims are related. That is, did the successful and unsuccessful claims involve a common core of facts and legal theories? *Thorne*, 802 F.2d at 1141. In this matter, it is clear that the successful and unsuccessful claims are closely related. Each of the unsuccessful or partially unsuccessful claims was based on alleged violations of the ESA. Four of the successful and partially successful claims also involved the ESA and in some cases the same sections of the ESA. These claims involved the same set of facts, similar legal theories, sought relief for the same course of conduct, were presented jointly, and the evidence that related to the unsuccessful claims was the same evidence used to support the prosecution of the successful claims. In many ways, the unsuccessful claims and successful claims were opposite sides of the same coin. For instance, during summary judgment, the federal defendants employed a litigation strategy that included a circular argument with respect to ONDA's § 7 claims to avoid having anybody take responsibility for unlawful action. The Forest Service claimed their grazing authorizations were lawful because NMFS had a issued a Biological Opinion (BiOp) authorizing the grazing, and NMFS claimed its BiOp was sound because it did not know the Forest Service had

7 -- ORDER

misrepresented its ability to conduct conservation and monitoring measures. This court concluded that although "NMFS was not required to analyze the veracity of the representations made by the Forest Service, the Forest Service was not entitled to rely upon the resultingly flawed BiOp . . . [t]he buck must stop somewhere." *ONDA v. Tidwell*, 716 F. Supp. 2d 982, 1004 (D. Or. 2010). If ONDA had not sought to prosecute both the successful claims against the Forest Service, and the unsuccessful claims against NMFS, it is possible it would have succeeded on neither. The court rejects federal defendants entirely unsupported argument that plaintiffs may not recover fees on claims against NMFS. As discussed above, litigation against both the Forest Service and NMFS was appropriate in order to ensure victory against either. Additionally, the Forest Service and NMFS are both executive agencies of the United States and were represented by the same counsel throughout this litigation.

The second question presented by *Hensley* is whether plaintiffs achieved "excellent results," an issue not directly challenged by federal defendants. The answer is clearly yes. Plaintiffs prevailed, or partially prevailed, on eight out of twelve claims eventually litigated, obtained substantial injunctive relief during the years prior to final judgment, and most importantly, were able to reverse the degradation of habitat in the MNF and achieve substantial protections for threatened steelhead. Plaintiffs achieved "excellent results." Because the court concludes that the successful and unsuccessful claims were related, and because plaintiffs achieved excellent results, the court declines to make any reductions to plaintiffs' requested fees due to plaintiffs' alleged failures.[3]

---

[3] In federal defendants' Response in Opposition to Interim Motion for Attorney Fees [631] the government argues that the government's position was "substantially justified" for purpose of EAJA with respect to certain claims against NMFS and for all claims in case number 2:03-cv-00213-HA. It is unclear whether federal defendants intended to pursue this argument in

8 -- ORDER

## 2. Line Item Complaints

Federal defendants make a large number of line item complaints challenging the hours spent litigating these cases. For the most part, these line item complaints are unsupported by fact or reference to case law and, without the assistance provided by plaintiffs in their Reply briefing, would have been nearly incomprehensible, as each page was bisected vertically into a non-sequential page.

Federal defendants attack the documentation supporting plaintiffs fee request and contend that many of the hours spent are not compensable as pre-litigation work, block billing, clerical tasks, and excessive. In many instances, the court agrees that the time spent was excessive, or otherwise not compensable. However, plaintiffs utilized appropriate billing judgment and did not seek compensation (64 entries), or sought reduced compensation (41 entries) for a large number of the billing entries that federal defendants needlessly challenged. As for the remainder of the challenged entries, the court concludes that the hours spent and documented are reasonable and compensable. As discussed above, this litigation required a great amount of time (in large part because of actions taken by federal defendants) and this court is not at all surprised by the number of hours expended. Additionally, as federal defendants have failed to provide any countervailing evidence (aside from unsupported statements that the hours spent are unreasonable) the court has difficulty in finding any specific reason to reduce the requests.

---

attacking the global fee petition as well. As discussed above, the claims against NMFS must not be considered in isolation. With respect to the claims in 2:03-cv-00213-HA and the appeal stemming from this court's resolution of a jurisdictional issue in that case, the government takes an overly narrow approach to the question of substantial justification. Looking at the entire case, both the "underlying government action at issue and the position asserted by the government in defending the validity of the action in court," the court finds government's position to have been unjustified. *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir. 1990) (quotations and citations omitted).

9 -- ORDER

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Lastly, though it is not entirely clear from federal defendants' brief, it appears that federal defendants challenge time spent on appellate issues, on "lost" motions, and on pre-litigation work. Federal defendants do not provide sufficient support for these arguments and the court finds no good reason to reduce the requested fees on any of these bases.

3.  **Attorney Rates**

Federal defendants challenge the attorney rates ONDA requests on essentially two fronts. The first is that (even in the context of the substantive ESA claims) the rates are excessive, both for the individual attorneys in light of the amount of time spent litigating this case, and collectively because ONDA should not have employed multiple attorneys with expertise in environmental law. This argument is rejected. The attorneys in this matter, David Becker, Peter Lacy, Kristin Ruether, and Stephanie Parent more than demonstrated that they are entitled to the rates requested. As discussed above, the court does not believe that they spent too much time on this case. Federal defendant's unsupported suggestion that ONDA should have employed fewer experts in environmental law is also rejected. This is not a case where multiple senior partners at a high priced firm are driving up fees unnecessarily. This was an environmental case and justified the use of attorneys learned in environmental law. All in all, the fees are not particularly high given the size and duration of this case. It is safe to say that if a large firm had handled this case, the fees would have been an order of magnitude larger.

The second attack on the rates charged is that EAJA (with statutory caps on rates) is the primary source of authority for an award of fees in this case. As discussed above, EAJA's fee shifting provisions are subordinated to the ESA's, which do not include a cap on rates. Therefore, if a particular billing entry is attributable to a substantive ESA claim, it is

10 -- ORDER

compensable at a reasonable rate, even if that entry is also attributable to a claim litigated pursuant to the Administrative Procedures Act (APA), which would typically be compensable at EAJA rates. For instance, time spent reviewing the administrative record was necessary for both the substantive ESA claims and the APA claims, and may be compensated above EAJA's statutory cap. However, time spent working on a issue that is unrelated to the ESA, such as legal research or briefing on a National Forest Management Act claim, may only be compensated pursuant to EAJA. Accordingly, the court is tasked with reducing ONDA's fee request on the basis that some of the hours are billed at an excessive rate because those hours were spent litigating issues related exclusively to APA claims. Through no fault of plaintiffs' counsel, it is generally impossible to distinguish between billing entries related to ESA claims, billing entries related to both ESA claims and APA claims, and those entries related exclusively to APA claims. It is simply impossible for an attorney to bill on a claim by claim basis. As such, these reductions are somewhat arbitrary.

The easiest solution to this problem would be to simply reduce a percentage of the billing entries to an EAJA rate based on the total number of APA claims versus substantive ESA claims. Such a reduction would mean that only one third of the billing entries could be charged at above EAJA rates. This is plainly the wrong solution as it ignores the fact that many of the billing entries are related to both APA and ESA claims and the fact that the ESA claims were, in this court's opinion, much more time consuming than the APA claims. In a case such as this, as the record reflects, a huge amount of time was spent working with the administrative and factual record and, more or less all such time was related to the ESA claims. Additionally, the preliminary injunction litigation was focused on the substantive ESA claims and on the facts

11 -- ORDER

related to those claims. As such, during the first few years of case number 2:07-cv-01871-HA, a disproportionate amount of time was spent on the substantive ESA claims.

Taking this information into account, the court concludes that the following reductions are in order. All billing entries in case number 2:03-cv-00213-HA, and the appeal therefrom, must be reduced to EAJA rates as all claims in that case are APA claims. In 2:07-cv-01871-HA, ten percent of billing entries for which compensation is sought above the EAJA rate must be reduced to the EAJA rate for 2007, 2008, and 2009. From 2010 on, twenty percent of such entries should be reduced to the EAJA rate for the applicable year. The court believes that such reductions adequately reflect the disproportionate amount of time spent litigating the ESA claims in each year of this case, and reflects the fact that the issues raised during and after summary judgment have, relative to the earlier years of these cases, required additional time on the APA claims. For instance, in 2010, Mr. Becker worked for 434.9 hours on this case. However he seeks compensation for only 432.8 hours, and for 14.6 of those hours, he seeks below EAJA rates. Therefore, he is seeking above EAJA rates for 418.2 hours in 2010. Of those 418.2 hours, twenty percent (83.6 hours) must be reduced to EAJA rates, adjusted for cost of living if appropriate, for the year 2010.

### 4. Costs and Expert Witness Fees

Federal defendants contend that the expert witness fees for which plaintiffs seek compensation are excessive and that certain costs are not recoverable pursuant to EAJA or the ESA.

The court turns first to federal defendants arguments regarding expert witness fees. Federal defendants contend that, consistent with EAJA, plaintiffs may not be awarded expert witness fees "at a rate in excess of the highest rate of compensation for expert witnesses paid by

the United States." 28 U.S.C. § 2412(d)(2)(A). Because the highest expert fee paid by the government in this matter was $89 per hour, federal defendants contend that all of plaintiffs' expert fees should be reduced to that rate. This court agrees, in part. For all expert fees charged in case number 2:03-cv-00213-HA, the rates must be reduced in accordance with the fact that the government's highest rate was $89 per hour.[4] However, for the expert fees incurred in case number 2:07-cv-01871-HA, the court concludes that the appropriate statute to determine expert witness fees is the ESA, not EAJA, as the experts' work was focused on issues related to the ESA's substantive provisions and all their work is attributable to that statute. The ESA provides for "reasonable . . . expert witness fees," and the court finds the requested fees in 2:07-cv-01871-HA to be reasonable. 16 U.S.C. § 1540(g)(4). Accordingly, those expert witness fees will not be reduced.

With respect to costs, federal defendants contend that the services of various consultants are not compensable. However, the court concludes that both the ESA and EAJA provide for the compensation of such consultants, so long as such costs are reasonable. The ESA provides for "costs of litigation" and EAJA allows an award of "fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 16 U.S.C. § 1540(g)(4); 28 U.S.C. § 2412(d)(1)(A). "Fees and other expenses" are defined to include "the reasonable cost of any study, analysis,

---

[4] Plaintiffs suggest that this court read the term "highest rate of compensation for expert witnesses paid by the United States" broadly. However, plaintiffs provide no evidence that the government pays rates in excess of $89 per hour in this type of matter and have not provided sufficient support for the proposition that this court should look beyond the confines of these cases.

13 -- ORDER

engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). In this case, the consultants and law clerks utilized by plaintiffs were reasonably employed and necessary to plaintiffs' success. The use of student law clerks in particular undoubtedly drove down the overall costs of litigation. With the exception of consultant Bill Marlett's costs, the court concludes that all plaintiffs' costs (with the reductions already conceded) are reasonable. However, the court finds the rates charged by Bill Marlett to be excessive and unjustified by the declarations submitted, which contain little information supporting such a high rate. Accordingly, the court reduces his rate to $100 per hour.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Attorney Fees [664] is granted in part as outlined above. Plaintiffs shall prepare a proposed order awarding the fees and costs as reduced above. Prior to submitting the order, plaintiffs shall provide federal defendants with seven days to object to any calculations conducted by plaintiffs.

IT IS SO ORDERED.

DATED this 2 day of July, 2013.

/s/ Ancer L. Haggerty
Ancer L. Haggerty
United States District Judge

14 -- ORDER